UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JEROME D. WARREN                                          MOVANT/DEFENDANT


v.                                          CRIM. ACTION NO. 3:14-CR-008-CRS
                                            CIV.  ACTION NO. 3:17-cv-00429-CRS


UNITED STATES OF AMERICA                                            DEFENDANTS


## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

## FINDINGS OF FACT

Jerome Warren is a federal prisoner.  In September 2016, Warren was sentenced to 120 months of imprisonment after he elected to enter a plea of guilty by plea agreement to count one of a superseding information that charged him with the knowing possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  He now seeks to vacate his conviction and sentence based on the alleged ineffective assistance of his appointed trial counsel.

Warren argues that his trial counsel failed to challenge the calculation of his Sentencing Guidelines offense level, as set forth in his plea agreement and as determined at the time of his sentencing; where, between the time Warren entered his change of plea in June of 2016 and had his sentence hearing three months later that September, the U.S. Sentencing Commission issued Amendment 798 on August 1, 2016 which deleted the offense of "burglary" as an enumerated offense under the "crime of violence" provisions of U.S.S.G. § 4B1.2 and removed the residual clause language identical to that struck down in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

1

Because his two prior Kentucky burglary convictions satisfy neither the enumerated offense nor the use of force provisions of § 4B1.2(a) of the Sentencing Guidelines after *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016), Warren insists that, had counsel timely challenged his base offense level following Amendment 798, he would have not received a 10-level increase in his base offense level from level 14 to level 24 with the result that his proper sentence would have fallen in the 51-to-63 month range, less than half of the current 120 month sentence imposed under the terms of the plea agreement.

As part of the Rule 11(c)(1)(B) plea agreement that led to his guilty plea, the United States agreed to dismiss the original indictment he faced.  That indictment charged Warren with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1), 924(a)(2) and 924(e), an offense that under the Armed Career Criminal Act (ACCA) carried a mandatory minimum 15-year sentence of imprisonment.  Count 1 of the original indictment identified three prior felony convictions: (1) a December 2012 conviction in Jefferson Circuit Court in Jefferson County, Kentucky for second-degree escape in case number 12-CR-2460; (2) a December 2012 Kentucky conviction in the same state court for second-degree burglary in case number 11-CR-3011; and (3) a September 2007 conviction, again in Jefferson Circuit Court, for second-degree burglary in case number 07-CR-0792.  The qualifying status of these two second-degree burglary convictions as crimes of violence under the Sentencing Guidelines and the ACCA is now disputed in the context of Warren's Sixth Amendment claim.

The plea agreement included among its provisions at paragraph 3 the agreed factual basis for the plea, which stated that:

> On September 7, 2013, the defendant was in possession of a Springfield Armory, model XD-40, .40 caliber semiautomatic pistol, bearing symbol number XD 530994.  Warren was advised of his rights and gave a recorded statement admitting that he possessed the firearm.  When police checked the firearm it was

2

determined to be stolen.  The firearm was manufactured outside of Kentucky and had therefore traveled in interstate commerce.

(DN 53, Plea Agreement, p. 1-2,¶ 3).[1]

Warren acknowledged in paragraph 4 of the plea agreement that the charge to which he would plead guilty carried a maximum term of imprisonment of 10 years to be followed by a three year term of supervised release. (DN 53, p. 2, ¶ 4).  The United States agreed in paragraph 10, not only to move for the dismissal of the original indictment that charged the 18 U.S.C. § 922(g)(1) offense, but also to recommend a sentence of imprisonment and fine at the lowest end of the applicable sentencing guideline range, along with a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).

In paragraph 11 of their agreement, the parties agreed, based on their independent review of the Sentencing Guidelines, that Warren given his prior burglary convictions would have a base offense level of 24 increased by 2 levels because the firearm was stolen and another 4 levels because the stolen firearm was possessed in connection with another felony (possession of marijuana and cocaine), which resulted in an offense level of 30.  (DN 53, p. 4 ¶ 11).  After a downward 3-level reduction for acceptance of responsibility, the parties agreed that Warren's total offense level was 27.  Both parties in part B of paragraph 11 agreed to reserve their respective right to object to the calculation of Warren's criminal history under U.S.S.G.§ 4A1.1, which was to be determined upon completion of the presentence investigation report.

Paragraph 12 of the plea agreement contained the standard waiver provisions. Warren agreed to knowingly and voluntarily waive his right to directly appeal his conviction and the resulting sentence under 18 U.S.C. § 3742, as well as, his right to contest or collaterally attack

---

[1] A detailed statement of the factual circumstances that led to the arrest of Jerome Warren on September 7, 2013 may be found in the Report and Recommendation of the Magistrate Judge entered on October 22, 2015 that recommended the denial of Warren's motion to suppress (DN 38, Findings of Fact, Conclusions of Law and Recommendation).

his conviction under 28 U.S.C. § 2255, except on grounds of ineffective assistance of counsel or prosecutorial misconduct. (DN 53, p. 5 ¶ 12).

After acknowledging in paragraph 14 of the plea agreement that the sentencing recommendation of the United States was not binding on the District Court, Warren and the United States included the following language in paragraph 15 of their agreement:

> Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors. Defendant states that he has informed the United States Attorney's Office and the Probation Officer, either directly or through his attorney, of all mitigating factors. Defendant will not oppose imposition of a sentence incorporating the disposition provided for within this Agreement, nor argue for any other sentence. If Defendant argues for any other sentence other than the one to which he has agreed, he is in breach of this Agreement. Defendant agrees that the remedy for this breach is that the United States is relieved of its obligations under this Agreement, the Defendant may not withdraw his guilty plea because of his breach.

(DN 53, p. 6 ¶ 15).

Immediately after Warren and the United States executed the plea agreement on June 14, 2016, the District Court conducted an arraignment on the superseding information along with a change of plea hearing. (DN 56, Order). The District Court determined that Warren's change of plea was knowing and voluntary, directed that the plea agreement be disclosed and confirmed that a factual basis for the plea of guilty existed. (DN 80, Change of Plea Transcript).

During the change of plea proceedings, the District Court and counsel discussed Warren's prior state felony convictions. Warren agreed with the District Court that he had two prior Kentucky felony convictions that were either crimes of violence or controlled substance offenses. (DN 80, p. 28). When asked about the nature of these prior felony offenses, Warren explained that when he was 18 he "caught two burglary charges." (Id.). The District Court then continued to ask Warren about these prior burglary convictions, inquiring "Is that breaking into a house?" Warren responded "Yes, sir." (Id.).

4

This exchange led the District Court to observe that, "We have to get rid of the residual clause and simply go under the basic common law definition of burglary." (Id.). After the prosecutor agreed, defense counsel added that, "I think *Johnson* is going to apply here Judge. I think it's an enumerated offense under the statute." (Id.). The District Court then inquired again of the Defendant, "Well, you broke into houses; right?" Warren responded, "Yes, sir, when I was 18." (Id. at pp. 28-29).

The District Court then briefly discussed with counsel the possession of a controlled substance aspect of the base offense level calculation due to the discovery of the cocaine in the vehicle at the time of Warren's arrest outside Dino's convenience store on September 7, 2013. (Id. at pp. 29-30). After the District Court satisfied itself that such cocaine possession under Kentucky law would satisfy the applicable sentencing guidelines requirement for the possession of a stolen firearm in conjunction with the commission of a felony, it accepted Warren's plea of guilty to Count 1 of the superseding information and initially set the proceedings for a sentencing hearing to be held on September 16, 2016, a date that subsequently was continued to September 26. (Id., p. 32).

In the interim, on August 1, 2016, the U.S. Sentencing Commission issued Amendment 798 to the 2015 edition of the U.S. Sentencing Guidelines Manual then in force to amend the definition of "crime of violence" under U.S.S.G. § 4B1.2(a). Prior to the August 1 amendment, subsection (a)(2) of § 4B1.2 included among its definition of "crime of violence" the enumerated offenses of the "burglary of a dwelling, arson, or extortion . . . ." The same subsection then also included a crime that "involves use of explosives, or otherwise involves conduct that presents a potential risk of physical injury to another." *Id*. After Amendment 798, the same subsection of § 4B1.2 redefined the term "crime of violence" to include "murder, voluntary manslaughter,

kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use of

unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as

defined in 18 U.S.C. § 841(c)."  U.S. Sentencing Guidelines Manual, § 4B1.2(a)(2) (Suppl. to

Appendix C 2015). Burglary was no longer included as one of the enumerated offenses under §

4B1.2(a)(2).

This change in the language of § 4B1.2(a)(2) appears to have gone largely unnoticed by

all involved.  The U.S. Probation Office filed a preliminary presentence investigation report

(PSR) on August 10, 2016 (DN 60) and a final PSR on September 20, 2016, neither of which

apparently made reference to Amendment 798.  As the government explains, the final PSR,

similar to the parties' plea agreement, determined Warren's base offense level to be 24 based on

his two prior Kentucky felony convictions for a crime of violence – – second-degree burglary.

The PSR increased this base offense level to level 30 because Warren had possessed a stolen

firearm in relation to another felony, possession of cocaine.  This level 30 was then reduced three

levels due to Warren's acceptance of responsibility for a base offense level of 27.  When

combined, Warren's criminal history category level VI and his offense level of 27, resulted in a

sentencing guideline range of 130 months to 162 months.

At the sentencing hearing of September 26, 2016, defense counsel, Don Meier, reported

to the District Court that Warren's appointed attorney, Laura Wyrosdick, had met with Warren

and that they had reviewed the PSR together "and we have no objection." (DN 82, p. 2).  The

District Court then directly confirmed this representation with Defendant Warren, adding that

"And there were no mistakes in there that you or she wanted to bring to my attention; is that

correct?"  (Id. at p.  3). Warren responded, "Yes, sir."  (Id.).

6

The District Court continued to note that the sentencing guideline range of 130-to-162 months, was limited by the statutory maximum of 120 months.  The Government cited to the existence of the parties' written plea agreement and ask that the Court impose a sentence of 120 months for possession of a stolen firearm, rather than the original ACCA charge of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) – – a charge that carried a potential sentence of 15 years up to life imprisonment.  (DN 82, pp. 3-4).  The District Court in response determined that, taking into account all of the sentencing factors under 18 U.S.C. § 3553, "a guideline sentence of 120 months is appropriate."

At that point in the proceedings, defense attorney Meier commented that it was anticipated in accordance with the plea agreement that a 10 year sentence would be imposed, adding that, "He agreed in that plea agreement not to oppose such a sentence, and that is our position here today."  (Id. at p. 5).  While defense counsel had tentatively explored the possibility of requesting that the federal sentence be served concurrently with Warren's state sentence under § 5G1 .3, attorney Meier reported to the District Court that the government had taken the position that any such request would be contrary to paragraph 15 of the plea agreement by which Warren agreed to accept the sentence as calculated in the plea agreement.  (Id. at p. 5).

After entertaining the comments of Warren's sister, Camille McClain, who asked for leniency for her younger brother, the District Court noted that the 120 month sentence crafted by the parties fell below the applicable guideline range of 130-to-162 months and was significantly less than the minimum 15 year sentence available under the original ACCA charge.  The District Court then granted the request of the United States to dismiss the original indictment and proceeded to impose the 120 month sentence while noting that Warren had by his plea agreement waived his right to appeal or collaterally attack his conviction.  (Id. at p. 9).

Warren now seeks to attack his 120 month sentence claiming that it is the result of ineffective assistance of counsel, who Warren claims should have challenged the use of his prior Kentucky second-degree burglary convictions as qualifying offenses for the purposes of § 4B1.2(a) of the Sentencing Guidelines so as to result in a 10 level reduction of this base offense level and a resulting sentencing range of 51-to-63 months. Warren concludes that by failing to take into account Amendment 798, as well as the Supreme Court decision rendered on June 23, 2016, in *Mathis v. United States*, 136 S. Ct. 2243 (2016), a full three months before his sentencing, his defense counsel's ineffective assistance effectively doubled the length of his sentence.

## CONCLUSIONS OF LAW

### I.

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. § 2255 must set forth one or more of three possible grounds for relief. *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011). The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. *Id.* (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979); *United States v. Gibson,* 424 Fed. Appx. 461, 465 (6th Cir. 2011).

Claims of ineffective assistance of counsel such as that now raised by Warren fall within the first category. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). *See also,*

*United States v. Nahodil*, 36 F.3d 323, 326 (3rd Cir. 1994)(" A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel.").

## II.

In *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the Supreme Court set out the general principle that all "defendants facing felony charges are entitled to the effective assistance of competent counsel."  Subsequently, in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court established the often-cited benchmark test for evaluating a claim of ineffective assistance of counsel.  *Id*.  Strickland created a two-part test for evaluating claims of ineffective assistance.  First, the defendant must show that the performance of his or her attorney was deficient.  An attorney's performance will be deficient if "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.

The second part of the two-part test of Strickland requires that the defendant establish that the deficient performance of his or her attorney prejudiced the defense.  Id.  When a claim of ineffective assistance is raised in the context of trial, this second part of the *Strickland* test requires the Petitioner to show that "a reasonable probability existed that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability in that context is defined by *Strickland* to be a probability sufficient to undermine the confidence of the court in the outcome of the proceedings.  *Id*.  In the words of *Strickland*, "the benchmark for judging any claim of ineffectiveness must be whether counsel's

9

conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court first applied the *Strickland* standard for ineffective assistance of counsel in the separate context of a guilty plea proceeding. *Hill* reaffirmed the fundamental two-part *Strickland* test that (1) the performance of counsel must fall below an objective standard of reasonableness, and (2) the defendant was prejudiced thereby so that a reasonable probability existed that but for his attorney's unprofessional errors, the result of the judicial proceeding would have been different. *Hill*, 474 U.S. at 56-60. *See Wright v. Van Patten*, 552 U.S. 120, 124 (2008)( "*Strickland*, *supra*, ordinarily applies to claims of ineffective assistance of counsel at the plea hearing stage."). *Hill*, however, modified the second part of the test, or "prejudice prong" as it is sometimes known, to require in the context of a guilty plea that the defendant show a reasonable probability that, but for the errors of his counsel, he or she would not have chosen to plead guilty, but rather would have insisted on going to trial. *Id.* at 59. *See Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000)( "We held that "to satisfy the 'prejudice' requirement [of *Strickland* ], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.")( *Hill*, *supra*, at 59). *See also Warner v. United States*, 975 F.2d 1207, 1214 (6th Cir.1992) (prejudice is proven if defendant shows a reasonable probability that but for counsel's defective advice, he would not have pleaded guilty).

*Hill* explained that the prejudice inquiry in many guilty plea cases, particularly those where the defendant maintained that his attorney failed to advise him of a potential defense, would analytically be similar to those situations wherein courts reviewed claims of ineffective assistance of counsel at trial. In the words of the Court, "the determination whether

the error prejudiced" the defendant by causing him to plead guilty rather go to trial will depend

on the likelihood that discovery of the evidence would have led counsel to change his

recommendation as to the plea. *Id*.

        This assessment will depend, in turn, largely on a prediction of whether the

evidence likely would have changed the outcome of a trial." *Id*. *See Dando v. Yukins*, 461 F.3d

791,. 798-99 (6th Cir. 2006) ("The Supreme Court added that an assessment of prejudice must

include a prediction of the likely outcome at trial."); *Maples v. Stegall*, 340 F.3d 433, 439-40

(6th Cir. 2003) (adopting an interpretation of Hill that requires the court to analyze the substance

of the petitioner's underlying claim to determine prejudice by whether the petitioner would have

succeeded at trial).

    A defendant's subjective assertion that he or she would have insisted upon proceeding to

trial but for the deficient performance of counsel is not controlling where an objectively

reasonable defendant would not have insisted upon a trial given the weight of incriminating

evidence, the severity of the potential penalties upon conviction and the extent to which the

terms of the guilty plea, as accepted, avoided such penalties.

    The following Sixth Circuit cases illustrate the objective nature of the prejudice analysis

of S*trickland*. *See Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)(defendant's

subjective assertion that she would have insisted upon proceeding to trial was not objectively

reasonable where overwhelming evidence of her guilt of sending threatening letters was

established by video surveillance footage, and she faced the prospect of five years in prison if

convicted, as opposed to the 6 months and $66,000 fine imposed pursuant to her plea bargain so

that she was not prejudiced by the failure of her counsel to mention the possibility of her

deportation despite her claim to the contrary); *Haddad v. United States*, 2012 WL 2478355 at *5

(6th Cir. June 28, 2012)(the test for prejudice is an objective one and a defendant cannot establish prejudice under *Strickland* merely by claiming that he would have insisted on proceeding to trial irrespective of the chances of success at trial); *United States v. Chan Ho Shin*, 891 F.Supp.2d 849 (N.D. Ohio 2012)( "[T]he Sixth Circuit has clarified that a petitioner cannot satisfy the prejudice element by merely telling the court that he would have gone to trial if he had received different advice. . . . .Rather, the test is objective, and Shin must convince this Court that "a decision to reject the plea bargain would have been rational under the circumstances.")(quoting *Pilla,* 668 F.3d at 373)(other citations omitted).

Finally, the mere failure of counsel to anticipate or to predict a future Supreme Court decision or holding will not, without more, satisfy *Strickland* or *Hill*. *See Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010); *Nichols v. United States*, 563 F.3d 240, 253 (6th Cir. 2009) (en banc); *United States v. Burgess,* 142 Fed. Appx. 232, 240 (6th Cir. 2005).

### III.

Here, Warren has failed to satisfy the prejudice prong of the two-part test of *Strickland* as applied in *Hill*. In other words, assuming that his appointed counsel rendered a deficient performance in failing to take into consideration Amendment 798 and *Mathis*, he has not shown a reasonable probability that, but for the deficient performance of his appointed federal defender, the outcome of the proceedings would have been more favorable to him or that an objectively reasonable defendant would have insisted on proceeding to trial on the original charge of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g) – – a charge that carried with it a mandatory, minimum 15 year sentence, given Warren's prior criminal history.

His sole argument in this respect is that following Amendment 798 to the § 4B1.2(a)(2) of the Sentencing Guidelines he was no longer subject to career offender status because burglary

at the time of his sentencing in September 2016 was no longer an enumerated crime of violence; and, his prior convictions for second-degree burglary in Kentucky did not qualify for the purposes of the ACCA enhancement after *Mathis* because that offense as statutorily defined by KRS § 511.030 is broader than the generic burglary offense included in 18 U.S.C. § 924(3)(2)(B)(ii) so as to preclude the possibility of the aforementioned 15 year minimum under the 18 U.S.C. § 922(g) charge of the original indictment.

Neither of these arguments is persuasive and an objectively reasonable defendant in Warren's position would not have abandoned the lesser 120 month sentence under the favorable plea agreement to insist on proceeding to trial only to risk a significantly higher sentence on the § 922(g) charge of being convicted felon in possession of a firearm that was contained in the original indictment. Indeed, given the unique nature of the plea agreement, in particular paragraph 15, what Warren actually would have been insisting upon would not necessarily be proceeding to trial on the § 922(j) knowing possession of a stolen firearm charge, but rather would be the right to challenge his agreement to plead guilty itself with the added opportunity to argue that the § 922(g) ACCA charge was not applicable to him given the nature of the two underlying second-degree burglary convictions.

Warren in paragraph 15 of the plea agreement fully agreed to accept the calculation of his sentence under the existing version of the sentencing guidelines in effect as of June 14, 2016, the date on which he knowingly and voluntarily entered into the agreement.[2]  Warren also specifically agreed in paragraph 15 that he "will not oppose imposition of sentence incorporating

---

[2] It should be noted that Warren does not directly attack the plea agreement as itself being entered into unknowingly or involuntarily by him due to ineffective assistance of counsel.  His Sixth Amendment IAC arguments are directed only to the performance of his appointed counsel at the time of his sentencing for their failure to attack the career offender designation in U.S.S.G. § 4B1.2 based on Amendment 798 and *Mathis*.  Accordingly, the provisions of paragraph 15 of the plea agreement are not subject to independent examination for their constitutionality or enforceability in the present context of Warren's § 2255 motion to vacate.

the disposition provided for within this agreement, nor argue for any other sentence." (DN 85, Plea Agreement, p.5, ¶ 15).  Further, the paragraph continued immediately thereafter to contain the contractual equivalent of an ad damnum provision, stating that

> If Defendant argues for any sentence other than the one which he has agreed, he is in breach of this Agreement.  Defendant agrees that the remedy for this breach is that the United States is relieved of its obligation under this Agreement, but Defendant may not withdraw his guilty plea because of his breach.

(Id.).

This provision is what led Warren's counsel, attorney Don Meier, who was substituting for appointed counsel, Laura Wyrosdick, on the day of the sentencing hearing on September 26, 2016, to decline to present an argument for concurrent service of Warren's federal sentence with his existing state sentence.  (DN 82, Transcript of Sentencing Hearing p. 5). The government had advised defense counsel, apparently prior to the sentencing hearing, that it would rely on the provisions of paragraph 15 to hold Warren to be in breach of the plea agreement if such an argument was raised.

The exact same result would have occurred had attorney Meier attempted to rely on Amendment 798 (or *Mathis* to the extent applicable to a sentence calculation under § 922(j)) to argue at sentencing for the imposition of a lower sentence range of 51-to-63 months to the charge of knowing possession of a stolen firearm contained in the superseding information.  Warren in such a situation could not have proceeded to trial on the superseding information, given that he had agreed not to withdraw his guilty plea if he breached the terms of the plea agreement.  Also the government in such a situation would not be bound even to go forward on the superseding information  as it had not yet moved to dismiss the original § 922(g) indictment at that point and

14

would not then have been bound by the plea agreement.[3] *See Nagi v. United States*, 90 F.3d 130, 136 (6th Cir. 1996)(movant not entitled to 2255 relief on claim of IAC based on reliance on wrong version of the sentencing guidelines, where reliance on the correct version would not have resulted in a more favorable sentence). *See also, Cofske v. United States,* 290 F.3d 437, 442-444 (1st Cir. 2002)(no prejudice for *Strickland* purposes was shown by § 2255 movant who alleged IAC for failure of his trial and appellate attorneys to challenge the parties' agreed upon guidelines base offense level 20 calculation under U.S.S.G. § 2K2.1(a)(4) for the knowing possession of a stolen firearm in violation of § 922(j), where such a challenge would have put at risk a highly favorable plea agreement by which movant avoided:  (1) the second count of the indictment, (2) the prosecution's potential use of his prior incriminating statements and (3) the loss of a 3-level reduction for acceptance of responsibility).

Put differently, all that Warren would have accomplished by his attorneys raising the Amendment 798 or *Mathis* argument at the time of sentencing would have been to put himself directly at risk of a possible trial and sentencing under 18 U.S.C. § 922(g) of the ACCA.[4] Under

---

[3] To the extent that the government now argues that Warren waived his opportunity to directly challenge the calculation of his sentence, the argument misses the point somewhat.  What Warren does now is not directly challenge the calculation of his sentence, but rather whether his trial counsel were constitutionally incompetent under the Sixth Amendment test of *Strickland* and *Hill* for their failure to raise the Amendment 798 issue and *Mathis* at the time of sentencing.  That constitutional argument survives, but that is all that survives. The fact that such IAC argument is related to his potential sentence calculation does not preclude it from being raised. *See, United States v. Fisher,* No. 3;13-CR-000158-GNS-DW, 2017 WL 2681662, at *2–3 (W.D. Ky. June 21, 2017)(defendant by the terms of his plea agreement waived his *Johnson* and *Mathis* based challenges to the use of his prior second-degree Kentucky burglary conviction, where the defendant did not bring an IAC claim based on either *Mathis* or *Johnson*, but rather directly challenged his sentence despite the plea agreement waiver of appeal and collateral attack provisions limiting any collateral attack to IAC and prosecutorial misconduct claims.)

[4] The Court notes that it is also possible under such circumstances that the government would have proceeded forward on the guilty plea to the superseding information, but instead argued for a sentence at the top of the applicable sentencing guideline range of 130-to-162 months, or a possible sentence of 13 years and six months. That would have represented a "best case scenario" for Warren if the Amendment 798 or *Mathis* issues were raised at sentencing.  More likely, the government would have chosen to proceed on the § 922(g), convicted felon in possession of a firearm charge of the original indictment, in which event a "best case scenario" would be the mandatory minimum 15 year sentence, or 180 months, five years *more* imprisonment than Warren actually received under the parties' plea agreement. *See, Burke v. United States*, No. 8:15-CR-461-T-27BM, 2017 WL 908408, at *2 (M.D. Fla. Mar. 7, 2017)(Amendment 798 to the career offender provisions of 4B1.2 had no impact on the ACCA).

the ACCA, the offense of burglary is specifically listed at 18 USC § 924(e)(2)(B)(ii) as being a violent felony.  In *Taylor v. United States*, 495 U.S. 575, 599 (1990), the U.S. Supreme Court concluded that Congress intended the term burglary to include "any crime, regardless of the exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  *Id*. at 599.  *Taylor* was later addressed in *Mathis v. United States* 136 S. Ct. 2243, 2248 (2016).

In *Mathis* the Supreme Court held that the federal courts are to apply the categorical approach, rather than the modified categorical approach, when they determine whether a prior state violent felony conviction, such as a burglary conviction, counts toward federal sentence enhancement under the enumerated offenses clause of the ACCA.  *Id*.   The crime at issue in *Mathis* was an Iowa burglary statute.  The Court determined in *Mathis* that the Iowa statute had a broader locational element than generic burglary so that the defendant's Iowa burglary conviction did not qualify as a prior violent felony conviction under the ACCA.

*Mathis* explained that this was so because the Iowa state burglary statute covered more conduct than the generic offense and therefore was not a qualifying burglary under the ACCA, even if the defendant's actual conduct per se had fit within the boundaries of generic offense if the modified categorical approach had been permitted.  *See Burrell v. United States*, No 14-CR-20306, 2017 WL 1295527 at*3 (E.D. Mich. Mar. 2, 2017); *United States v Barnett*, No 06-CR-71-JMH-1, 2016 WL 3983318 at *1-3 (E.D. Ky. July 25, 2016) (discussing *Mathis*).

After *Mathis,* a number of federal courts at both the trial and appellate level in the Sixth Circuit have indeed held that Kentucky's third-degree burglary statute, KRS § 511.040, no longer qualifies as being an ACCA predicate offense given the scope and nature of the statutory definition of third-degree burglary in Kentucky.  Under KRS 511.040 "a person is guilty of

burglary in the third-degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building." *Id.* The term "building" is defined at KRS § 511.010 to include "any structure, vehicle, watercraft or aircraft." See, *United States v. Brumback*, 614 Fed App'x. 280, 291 (6th Cir. 2015). Thus, the Kentucky statute, similar to the Iowa burglary statute at issue in *Mathis*, itemizes various places that the crime of 3rd degree burglary could occur in the form of "disjunctive factual scenarios rather than separate elements." *Barnett,* 2016 WL 3983318 at * 2. Because Kentucky's third-degree burglary statute defines a single crime with a set of elements that are broader than generic burglary, while specifying multiple means to fulfill its locational element, the criminal offense of third-degree burglary in Kentucky is not a qualifying predicate offense under the ACCA, as even the government conceded in *Barnett*. *Id.* at *2. *See, United States v. Brumback,* 614 Fed. App'x. 288, 291 (6th Cir. 2015)("Kentucky law gives the term 'building' a broad meaning. Besides the ordinary meaning of building, the term means "any structure, vehicle, watercraft or aircraft…." Consequently, "Kentucky's third-degree burglary statute does not categorically qualify as a generic burglary.")(quoting KRS § 511.010); *Ginter v. United States*, No. 16-5377, 2017 WL 4570519, at *1 (6th Cir. June 12, 2017) ("Although Kentucky's third-degree burglary statute lists only one locational element, "building," another section of the burglary chapter of Kentucky's Penal Code defines a "building" to include several ways to satisfy this element. Thus, the statute lists alternative means of satisfying the "building" element. *Mathis* prohibits the application of a modified categorical approach in this circumstance.").

The same cannot be said of Kentucky's second-degree burglary statute, KRS § 511.030 Burglary in the second-degree as defined by KRS § 511.0302 occurs when "a person, with the intent to commit a crime, knowingly enters or remains unlawfully in a **dwelling**."  KRS §

511.030(1) (emphasis added).  Second-degree burglary is a class C felony, whereas burglary in the third-degree is a class D felony in Kentucky.  *Compare* KRS § 511.030(2) *with* KRS § 511.040(2).  Under KRS § 511.010(2) the term "dwelling" in turn is defined to mean "a building which is usually occupied by person lodging therein."  Nowhere in subsection (2) of KRS 511.010 is there to be found any direct mention of a "structure, vehicle, watercraft, or aircraft" such as that expressly set forth in the statutory definition of "building" contained in KRS § 511.010(1)(a), (b).

Consequently, it has been repeatedly held, both before and after *Mathis,* that "the elements of Kentucky's second-degree burglary statute are the same as those of the generic burglary offense . . . [such that a second-degree] burglary conviction falls within the enumerated offense of "burglary of a dwelling" under the ACCA.  *See, e.g., United States v. Moody*, No. 5:13-CR-133-KKC-HAI, 2017 WL 2434788, at *3–4 (E.D. Ky. Mar. 9, 2017), *report and recommendation adopted*, No. CR 5:13-133-KKC, 2017 WL 2434535 (E.D. Ky. June 5, 2017) (addressing the Kentucky statutory definition of second-degree burglary under the career offender provisions of U.S.S.G. § 4B1.2(a)(2) prior to the enactment of Amendment 798, while observing that the same reasoning would apply to conviction under § 922(g) of the ACCA); *United States v. Vanover*, No. CR 10-14-DLB-REW-1, 2017 WL 1356328 at *4-6 (E.D. Ky. Apr. 11, 2017)(" Despite the fact that the definition of "dwelling" contains the broadly-defined term "building," the Sixth Circuit has found that Kentucky's second-degree burglary categorically counts as a crime of violence under the enumerated offense clause.")(citing *United States v. Douglas*, 242 Fed. Appx. 324, 331 (6th Cir. 2007)); *United States v. Taylor*, 800 F.3d 701, 719 (6th Cir. 2015)(" In *U.S. v. Jenkins*, this Court found that second degree burglary in Kentucky is a violent felony under the enumerated offenses clause in § 924(e)(2)(B)(ii), and,

18

thus, found it did not need to rely on the residual clause to determine if second degree burglary was a predicate offense."); *United States v. Jenkins*, 528 F. App'x 483, 484–85 (6th Cir. 2013) ("[T]he term 'violent felony' " expressly includes "burglary," 18 U.S.C. § 924(e)(2)(B), which covers "an unlawful or unprivileged entry into ... a building or other structure, with intent to commit a crime," *Taylor*, 495 U.S. at 598.  The elements of second-degree burglary in Kentucky largely track this definition.").[5]

In light of the above-cited case law, for Warren to now insist that he would have proceeded to trial on the ACCA charge of being a convicted felon in possession of a firearm under 18 U.S.C. § 922(g), merely because *Mathis* called into question a separate, lesser Kentucky burglary statute is not something that an objectively, reasonable defendant would have done, given that the outcome of the proceedings at such a trial would, at a minimum, have increased his sentence of conviction by five years, if not potentially far more.  Consequently,

_____

[5] The Court is well aware that four concurring Sixth Circuit judges in the *en banc* decision, *United States v. Stitt*, 860 F.3d 854, 874-75 (6th Cir. 2017) (White, Bachelder, Moore and Stranch, JJ, concurring) have suggested in passing recently that cases such as *Moody* and *Jenkins* are wrongly decided to the extent that they hold that second-degree burglary in Kentucky remains a qualifying predicate crime of violence for the purposes of the ACCA.  Those judges in their concurrence focus on the fact that the statutory definition of "dwelling" under KRS 511.010(2) includes the term "building," which under KRS 511.010(1) is defined to include a "structure, vehicle, watercraft, or aircraft."  From this language, they reason that Kentucky's second-degree burglary statute, KRS § 511.030 necessarily includes the full range of locations that otherwise would be limited to third-degree burglary under KRS § 511.040 and therefore also runs afoul of *Mathis*.

The problem with such an approach to statutory interpretation is that it interjects into KRS § 511.030 an entire range of locations that the Kentucky Legislature never expressly indicated would be included within the term "dwelling" contrary to the following state court decisions *See Colwell v. Comm.*, 37 S.W.3d 721, 725-26 (Ky. 2000)(distinguishing KRS 511.020 and KRS 511.040);*Soto v. Comm.*, 139 S.W.3d 827, 869 (Ky. 2004)(same);*Carranza v. Comm.*, 2012 WL 424997 at *5 (Ky. App. 2012)(same). Such an interpretation of the two burglary statutes if adopted would, not only violate the various well-established rules of statutory construction cited by the United States at pages 10-12 of its response, but also would give rise to serious constitutional issues.  It would theoretically permit near unbridled discretion by a Kentucky prosecutor when electing to charge either second-degree burglary or third-degree burglary, given that in the view of the concurrence in *Stitts* a dwelling is a building and a building is a structure, a vehicle, a watercraft or an aircraft.

We decline to embrace the view of the concurrence in *Stitts,* and indeed we may not do so, given that it appears contrary to other previously published and unpublished decisions of the Sixth Circuit such as *Taylor* and *Jenkins*.  It is up to the Sixth Circuit to reconcile its own case law in this respect to the extent that the concurrence in *Stitts* calls into question the previously unanimous view concerning Kentucky's second-degree burglary statute as a qualifying crime of violence under the enumerated offense provision for generic burglary found in the ACCA.  A certificate of appealability under 28 U.S.C. §2253(c)(1) on this question, however, is in our view appropriate given the standard for the issuance of such certificates.

Warren absolutely was not prejudiced by the failure of his attorney to raise Amendment 798 or *Mathis* at his sentencing hearing on September 26, 2016 irrespective of whether the failure to do so was a deficient performance. Because he cannot satisfy the prejudice prong of *Strickland* as applied in *Hill*, his IAC claim must fail.

## IV.

The only remaining question is whether Warren will be granted a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c).  A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

Such a substantial showing is made when a prisoner establishes merely that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling.  *Buck v. Davis*, 137 S. Ct. 759 (2017)(" The COA inquiry, we have emphasized, is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."); *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c).  *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002).  *See also Slack v. McDaniel*, 529

U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)).  A prisoner may raise on appeal only

those specific issues for which the district court grants a certificate of appealability.  *Powell v.*

*Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Here, reasonable jurists could debate whether Warren has stated a valid claim of

ineffective assistance of counsel.  The continued status of Kentucky's second-degree burglary

offense under KRS § 511.030 as a qualifying predicate offense for ACCA purposes is subject to

debate by reasonable jurists as the decision in *Stitt* plainly demonstrates.  While the current

weight of the law in the Sixth Circuit on this issue seems to fall heavily against the view of the

concurrence in *Stitt*, the issue nonetheless remains highly debatable so that Warren should be

afforded the opportunity to obtain appellate review of his Sixth Amendment argument in this

respect should he elect to appeal any possible adverse decision by the District Court following its

review of any timely objections that Warren might file in response to the present

Recommendation.

## RECOMMENDATION

The Magistrate Judge, having made findings of fact and conclusions of law, recommends

that the motion to vacate, set aside or correct be denied given the absence of a showing of

prejudice under *Strickland* and *Hill*; and further, that the movant be granted a certificate of

appealability to the extent he raises a claim of ineffective assistance of trial counsel that relies on

the status of second-degree burglary in Kentucky under KRS § 511.030 as a qualifying

prerequisite offense under the enumerated offenses statutory provision set forth in the ACCA.

**<u>NOTICE</u>**

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived.  *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); *United States v. Walters*, 638 F.3d 947, 949-50 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2)

Copies to Defendant and Counsel of Record