UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                                              CRIMINAL ACTION NO. 3:14-CR-8-CRS

JEROME D. WARREN                                                                            DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion of the defendant, Jerome D. Warren, *pro se*, seeking a reduction of his term of imprisonment due to fear of serious illness or death from the COVID-19 virus (DN 111). The Court denied Warren's earlier motion for compassionate release on August 7, 2020 for failure to exhaust his administrative remedies. (DN 110).

On August 23, 2020, Warden Gilley received a request for compassionate relief from Warren. The Warden responded twenty-two days later on September 14, 2020 and denied his request. The Warden noted that his request was made under section 2, Requests Based on Non-Medical Circumstances- Extraordinary or Compelling Circumstances, and that Warren did not meet the requirements of Program Statement 5050.50 for compassionate release. (DN 111-1. There is no evidence, nor does Warren contend, that he appealed the denial of his request.

Five months later on February 1, 2021, he filed a second motion for compassionate release, stating that he "has exhausted the avenues of administrative relief," DN 11, p. 3, but he provides no evidence to substantiate or explain this argument. The United States has responded

and objected to the motion on grounds of failure to exhaust administrative remedies and also on the merits (DN 113).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 142,238,073 confirmed cases worldwide and 3,032,124 deaths; in the United States, there are 31,350,025 confirmed cases and 561,921 deaths.[3] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can yield catastrophic result is apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when considering requests for compassionate release. Suffice it to say that the Court addresses motions for compassionate release, and Warren's motion in particular here, with the gravity of the situation in mind.

Warren is serving a 120-month prison sentence after pleading guilty in 2016 to a Superseding Information charging Warren with one count of possession of a stolen firearm. DN 64. His prior criminal history yielded a criminal history score of 20, placing him in a Criminal

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited April 21, 2021).

History Category VI under the Guidelines calculation. Warren is presently incarcerated at the Federal Correctional Institution ("FCI") in Manchester, Kentucky.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Warren has provided a copy of an Institution Response – Inmate Request to Staff Member from Warden Gilley dated September 14, 2020 responding to Warren's August 23, 2020 request for compassionate release (DN 111-1). As the Warden responded within thirty days of receipt of his request, Warren was required to follow through on the appeals process before applying to this Court for relief. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison."). There is no suggestion that Warren did anything further than file his initial request with the Warden, then file his motion here five months later.

The problem here is that Warren received a response and did not appeal, despite that avenue being fully available to him. Thus, he never "fully exhausted his administrative rights" as required by 18 U.S.C. § 3582(c)(1)(A), a prerequisite before a defendant may seek

3

compassionate relief from the Court. While § 3582(c)(1)(A) provides that "after the lapse of thirty (30) days since the warden's receipt of a request to move on defendant's behalf for a sentence reduction," the defendant may file his motion for compassionate release directly with the Court, we find that Warren cannot be permitted to capitalize on this delay and bypass the appeal process. He chose not to appeal and apparently did nothing for five months until he filed the present motion.

After considering various opinions addressing the exhaustion provisions of the First Step Act, the Court concludes that the thirty-day exception to the exhaustion requirement was not designed to provide a "gotcha" mechanism when a response is actually received within the thirty day period and the defendant has an available avenue to fully exhaust his rights. Rather, the "lapse of 30 days" provision was designed to address cases in which no prompt response is forthcoming from the BOP and a defendant is left in limbo awaiting agency action. The statute tries to strike a reasonable balance between affording the BOP time to address the request, initially and on appeal, before there is review by the courts and ensuring there is no undue delay in the agency process. A defendant is thus deemed to have exhausted and may file his motion with the Court without waiting further for a BOP response after a lapse of thirty days from the date of his request to the warden.

The "lapse of 30 days" language has been variously interpreted as a "lapse of time" provision or a "futility" provision.

Under the "lapse of time" interpretation, once thirty days passes from the warden's receipt of a defendant's request for compassionate release, the defendant may petition the federal court for relief whether or not the warden has responded within the thirty-day period. The "lapse of time" is viewed simply as a waiting period before judicial relief may be sought.

This interpretation would completely emasculate the requirement of full exhaustion of all administrative rights. Higher level review by the BOP by way of administrative appeal would be rendered entirely optional. "Preventing prisoners from charging straight to federal court serves important purposes." *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020). The BOP is uniquely positioned to assess prisoners' mental and physical health and potential risk to the public if released, and whether extraordinary and compelling reasons exist for compassionate release. *See United States v. Haas*, Civ. No. 6:17-cr-00037-GFVT-HAI-1, 2020 WL 4593206 (E.D.Ky. Aug. 7, 2020)' *citing United States v. Zuckerman*, No. 16 CR 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *Alam*, 960 F.3d at 834.

Indeed, in enacting the First Step Act, Congress sought to enhance the effectiveness of the BOP's compassionate release review scheme, not replace it. *See United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277 (E.D.Ark. May 14, 2020); *United States v. Ng Lap Seng*, 459 F.Supp.3d 527, 536 (S.D.N.Y. Mar. 15, 2021)("If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act.").

Reading the "lapse of 30 days" language as a "futility" provision satisfies the apparent dual objectives of Congress to respect the BOP's process while ensuring expeditious and expanded access to the Courts for defendants.

In *Haas, supra,*, the district court explained that § 3582(c)(1)(A) requires the defendant to "fully exhaust all administrative rights" and where the BOP responds to the defendant's request within thirty days, the defendant is required to see the appeals process through and the "lapse of 30 days" provision has no bearing on the case. *Haas, supra.,* at *5. The court noted, however, that the Sixth Circuit has yet to specifically address whether a defendant must fully exhaust his

5

appeals when he receives a response from the BOP within the thirty-day window. *Id.* Concluding that a reading of the "lapse of 30 days" language as a "futility" provision led to a logical result, the district court in *Haas* found that full exhaustion of the administrative process was required and held that Haas had failed to exhaust his administrative remedies.

Under a "futility" theory, where the defendant has been afforded an avenue for appeal, he is required to pursue it before seeking relief in federal court and the "lapse of 30 days" provision is ineffective to alter that obligation. Under a "passage of time" interpretation, however, the receipt of a response would not compel Warren to appeal, though the process is made available to him. The Court finds this outcome to be inconsistent with Congressional intent, especially in this instance where time clearly was not of the essence for Warren. Warren did not file his motion for compassionate relief until five months after receipt of the Warden's denial. We do not read the statute to render appeals optional, as such reading would render the exhaustion language superfluous. This Court would therefore follow the "futility" interpretation of the statutory 30-day language and find that Warren failed to exhaust administrative remedies.

In any event, this is Warren's second motion and this time he did attempt to exhaust. While we disagree with any rationale that he can claim to have fully exhausted, there is apparently room for a difference of opinion on this point. In *United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561 (E.D.Tenn. Oct. 20, 2020), the district court noted that "reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden." *Id.* at *4. The court stated that "although the Sixth Circuit has yet to encounter the issue presented here, it implied it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and

regardless of the appeal status of a denial by the warden," *quoting Alam*, 960 F.3d at 834. Therefore, for purposes of this opinion, we will assume that Warren satisfied the exhaustion requirement of the First Step Act and address the substance of his motion.

Warren's motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and

compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion, Warren, 32 years old, described deplorable conditions in which he claims he is forced to live during the COVID-19 pandemic and his fear of contracting COVID-19. DN 111, pp. 2-3. This is the sole ground for the assertion of "extraordinary and compelling" circumstances warranting compassionate release. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Elias*, 984 F.3d. 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

We note first that on December 20, 2020 [prior to the filing of the present motion] Warren was diagnosed with COVID-19 and placed in isolation. The medical records reflect that he remained asymptomatic and was returned to the general population after the quarantine period. DN 115, p. 20. Thus, it appears that Warren's basis for his request for compassionate release – to avoid contracting COVID-19 – is now moot. *See ie. United States v. Billings*, 2020 WL 4705285 at *5 (D. Colo. Aug. 13, 2020)("where inmates have recovered from COVID without lingering symptoms, courts have found the theoretical risk of reinfection does not present a compelling reason warranting compassionate release.", collecting cases)[4]; . *United States v. Buford*, 2020 WL 4050242 at *3m *6 & n. 4 (E.D.Mich. July 20, 2020)(same).

---

[4] The *Billings* court notes recent medical authority suggesting the development of antibodies in individuals who have been infected and recovered from COVID-19: *See, e.g.*, Dr. Robert D. Kirkcaldy, et al., *COVID-19 and Postinfection Immunity, Limited Evidence, Many Remaining Questions*, Journal of the American Medical Association 2245, 2246 (May 11, 2020) (available at: https://jamanetwork.com/journals/jama/fullarticle/2766097) ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily. However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking.") (last accessed August 11, 2020); Dr. Francis Collins, NIH Director's Blog, *Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies* (May 7, 2020) (available at: https://directorsblog.nih.gov/2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies/) ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long,

Warren's concern that he faces the potential for infection with the COVID-19 virus in the facility, we note that as of this writing, the Bureau of Prisons website (https://www.bop.gov) reports no cases of COVID-19 either among the inmates at FCI Manchester. Further, 415 of 1,037 inmates and 87 staff members have received the COVID-19 vaccine. Thus, while Warren himself declined to receive the vaccine, those with whom he must come in contact are taking steps to prevent any further occurrence of the coronavirus in the prison. Warren has failed to articulate an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) as the prevalence of COVID-19 at FCI Manchester and the attendant risks associated with exposure to the virus constitute the sole basis for his motion.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Warren's crime weigh against release as he poses a very real danger if released from custody. The Court agrees with the United States for a number of reasons.

First, Warren, a convicted felon was found in possession of a stolen firearm. He has convictions for five prior burglaries, one in which he was found burglarizing a pawn shop attempting to steal numerous firearms. He also has convictions for receiving stolen property,

---

these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.") (last accessed August 11, 2020).) In addition, a recent study of 285 patients (and 790 individuals with whom they came in contact) from the Korea Centers for Disease Control and Prevention found that recovered COVID-19 patients who test positive again were not infectious. *See* healthline, *People Who Test Positive for COVID-19 After Recovering Aren't Infectious* (May 26, 2020) (available at: https://www.healthline.com/health-news/people-reinfected-with-covid-19-werent-infectious) (last accessed August 11, 2020).)
*United States v. Billings*, No. 19-CR-00099-REB, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020).

10

possession of stolen property, and wanton endangerment. Finally, and even more troubling, Warren was on conditional discharge at the time of the offense that resulted in his conviction and sentence in this case. The Court finds that the nature and circumstances of the offense as well as these aspects of the defendant's history and characteristics militate against a sentence reduction, as the danger posed to the community appears great.

Warren states that he has certificates of achievement for good conduct in prison, he "is not a violent offender and poses no threat to society," and he has a place to live and support after he is released from custody. DN 111, pp. 1, 3-4. Warren has not supported any of these statements with documentation such as certificates of completion or records verifying his good conduct. We note, however, that the United States has not mentioned or addressed any of the information related by Warren, nor has it attempted to balance the sum total of information addressed to the §3553 factors. The only comment in the United States' brief concerning post-sentencing conduct is wholly conclusory: "Nor is there any reason to think Warren has been rehabilitated during the time he's served this sentence." DN 113, pp. 10-11. This is unhelpful.

This Court has repeatedly been advised by the United States Court of Appeals for the Sixth Circuit that post-sentence conduct is relevant to the Court's determination whether a reduction in sentence should be granted. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)(thorough renewed consideration of the § 3553(a) factors is required; court correctly included post-sentencing behavior as part of that inquiry); *United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)(reversed and remanded because the Court failed to mention the defendant's argument regarding his post-conviction conduct); *United States v. Jenkins*, No. 20-5512 (6th Cir. Feb. 4, 2021)(Remanded for failure of the district court to mention defendant's post-sentence conduct in its explanation of its decision). While it remains wholly within the Court's discretion whether and to what extent to

reduce a sentence, the Sixth Circuit requires district courts to give a "complete review" to a motion for sentence reduction under the First Step Act.

We will assume for the sake of this analysis that Warren's contentions concerning his good conduct in prison at FCI Manchester can be verified. We find it laudable that Warren is motivated to follow the rules and maintain good behavior. We note, too, that good conduct is expected and rewarded in the prison system. Warren has served approximately 58 months of a 120-month sentence – less than fifty percent of his sentence.

In imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the nature of the conduct for which Warren pleaded guilty -- he was a convicted felon found in possession of a stolen firearm  As already noted, Warren had a substantial prior criminal history. Further, the fact that he was on conditional release at the time he committed the crime in this case evidences a complete disregard for the sanctity of the law. We are not persuaded that Warren's good conduct in prison necessarily represents a new respect for the legal system. Considering the seriousness of the crime and Warren's history and characteristics, this Court found that a sentence of 120 months imprisonment was sufficient but not greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense. The Court has revisited these factors and finds nothing to call into question the initial determination of the appropriate sentence. The Court finds at this juncture, with the defendant having only served half of his sentence, that a reduction in sentence would undermine the carefully balanced sentencing factors which are served by the sentence imposed. The defendant's good conduct in prison suggests to this Court the efficacy and appropriateness of the sentence. The Court finds no ground to justify any reduction in Warren's sentence.

As a final note, Warren claims in his motion that if he receives credit for time served in pretrial custody he will be eligible for home detention in November of 2021. This is a matter for the BOP, not this Court. He can seek administrative review of any determination with which he disagrees. He also indicates that he has a plan for himself upon release from incarceration. While not verified, this information shows a planful approach by this defendant which the Court hopes will serve him well after service of his sentence.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Jerome D. Warren, for compassionate release (DN 111) is **DENIED.** The motion of the United States to file records under seal (DN 114) is **GRANTED**.

**IT IS SO ORDERED.**

May 13, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc:   Counsel of Record
      Jerome D. Warren
      Reg. #15672-033
      FCI Manchester Qtr. L-B
      P.O. Box 4000
      Manchester, KY  40962-4000